IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Shane Comer, | : | Case No. 1:20-cv-985 |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | Magistrate Judge Stephanie K. Bowman |
| v. | : | |
| | : | **ORDER ADOPTING WITH** |
| Commissioner of Social Security, | : | **MODIFICATION REPORT AND** |
| | : | **RECOMMENDATION** |
| Defendant. | : | |
| | : | |

This matter is before the Court on the Magistrate Judge's Report and Recommendation (Doc. 16) in this Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") case. The Magistrate Judge recommends that the Administrative Law Judge's ("ALJ's") finding of non-disability be affirmed and that this case be terminated on the Court's docket. Plaintiff filed Objections to the Report and Recommendation, to which the Commissioner responded. (Docs. 17, 19.) For the reasons that follow, the Report and Recommendation (Doc. 16) will be **ADOPTED WITH MODIFICATION**.

I.  Background

   A. Administrative Procedural History

Plaintiff Shane Comer filed an application for DIB and SSI on January 30, 2018, alleging disability as of May 5, 2004. (Certified Admin. Record, Doc. 9 at pp. 186–91.[1]) After Comer's application was denied, he requested an administrative hearing, which was conducted by ALJ Gabrielle Vitellio by video on October 9, 2019. (*Id*. at pp. 57–85.) At the hearing, Comer appeared unrepresented by counsel, and a vocational expert, Charles McBee, testified. (*Id*.) On

---

[1] The Certified Administrative Record has not been stamped with PageID numbers. The Court cites to the page numbers stamped on the lower right-hand corner of the pages (pp. 1–536).

January 13, 2020, ALJ Vitellio issued her decision denying Comer's application for benefits. (*Id*. at pp. 35–49.) On October 20, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (*Id*. at pp. 1–4.)

**B. ALJ's Decision**

To determine whether a claimant is disabled, the ALJ follows a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(b). Second, she considers whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See* 20 C.F.R. § 416.920(c). Third, if an impairment is severe or a combination of impairments is severe, the ALJ must determine whether the impairments, singly or in combination, meet or equal a listing in the listing of impairments in Appendix 1. *See* 20 C.F.R. § 416.920(d); 20 C.F.R. Part 404, Subpart P, Appendix 1. Fourth, if an impairment does not meet a listed impairment, the ALJ must assess and make a finding about the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *See* 20 C.F.R. § 416.920(e); 20 C.F.R. § 945. And fifth, if the claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See* 20 C.F.R. § 416.920(e); *Combs v. Comm'r of Soc. Sec*., 459 F.3d 640, 643 (6th Cir. 2006) (en banc).

The RFC is the most a claimant can do despite his limitations and is assessed based on all the relevant evidence in the case record. 20 C.F.R. § 416.945(a). Pursuant to 20 C.F.R. § 416.945(a)(3):

> We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the

>evidence we will use to make a finding about your residual functional capacity. (See § 416.912(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 416.912(d) through (e).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 416.913.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. § 416.945(a)(3).

The ALJ determined that Comer has severe impairments of schizoaffective bipolar disorder; generalized anxiety disorder; and a history of polysubstance dependence and non-severe impairments of diabetes mellitus and hypertension. (Doc. 9, pp. 40–41.) However, she found that Comer does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (*Id.* at p. 41.) Specifically, she concluded the severity of Comer's mental impairments does not meet or medically equal the criteria of listings 12.06 (anxiety and obsessive-compulsive disorders) or 12.04 (depressive, bipolar, and related disorders). (*Id.*) The ALJ explained:

>In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

(*Id.*)

The ALJ found Comer has no limitation in remembering or applying information, as he was able to read, watch television, count change, and was noted to have an intact memory. (*Id.*)

3

She found moderate limitation interacting with others as he reported being paranoid and thinking others were talking about him, and he testified he had walked off the job for being anxious.  (*Id*.)  However, he was able to shop with his mother, sell artwork to friends, and was noted cooperative and pleasant by his treatment providers.  (*Id*.)  She determined he has moderate limitation with concentrating, persisting, or maintaining pace, as he reported trouble remembering to open mail and was noted to have limited insight and judgment.  (*Id*.)  However, he was able to do artwork, read, and watch television.  (*Id*.)  Finally, as for adapting or managing oneself, the ALJ found no limitation as Comer is able to get to appointments, make meals, manage his hygiene, sell artwork to friends, and manage his medications.  (*Id*. at p. 42.)  Because Comer's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.  (*Id*.)  She also found that "paragraph C" criteria were not met, which require a mental disorder that is serious and persistent.  (*Id*.)

The ALJ found that Comer has the RFC to perform "a full range of work in all exertional levels but with the following nonexertional limitations: he can carry out and understand simple instructions in environments with no assembly line production; no public interaction and occasional interaction with the public and supervisors."  (*Id*. at p. 42.)  To reach this conclusion, the ALJ first determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Comer's symptoms.  (*Id*.)  Second, she evaluated the intensity, persistence, and limiting effects to determine the extent to which symptoms limit Comer's work-related activities.  (*Id*. at p. 42–43.)

The ALJ reviewed Comer's symptoms and the extent to which symptoms are consistent with objective medical evidence and other evidence, including medical opinions and prior administrative medical findings.  She relied upon Comer's testimony and the hearing transcript

as well as medical records.  (*See id.* at pp. 51–53.)  The ALJ also considered the state agency medical consultant's opinion and state agency psychological consultants' opinion that Comer had no more than moderate psychological limitations and could occasionally and superficially interact with coworkers, supervisors, and the general public and that he is able to perform work related tasks in situations where duties are relatively static and changes can be explained.  (*Id*. at p. 46.)  The ALJ explained that she found Comer's medical impairments could be expected to cause some of his alleged symptoms; however, she found his statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with medical and other evidence in the record.  (*Id*. at p. 43.)  After summarizing the medical records, the ALJ found "the medical evidence of record to be more probative than the claimant's testimony and allegations." (*Id*. at p. 47.)  She stated: "the claimant's allegations that he cannot work are inconsistent with the records, in that throughout the adjudicated period he could prepare simple meals, shop with his mother, make change, do artwork and sell it to friends, watch movies, read, and visit his grandmother, get to appointments and relate well with his providers[.]"  (*Id*.)  Although Comer's symptoms require limitations, she found Comer retains the ability to engage in substantial gainful activity.  (*Id*.)

      The ALJ determined that considering Comer's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"  (*Id*.)  The vocational expert, Mr. McBee, testified that considering Comer's age, education, work experience, and RFC, an individual with his background would be able to perform the requirements of "representative occupations such as industrial cleaner, Dictionary of Occupational Titles (DOT) # 381.687-018, with 560,000 jobs in the national economy, SVP 2; stores laborers, DOT # 922.687-058, with 91,000 jobs in the national economy, SVP 2; and hand

5

packager, 920.587-018, SVP 2, with 106,000 jobs in the national economy (Testimony)." (*Id.* at pp. 47–48.) The ALJ noted that there was inconsistency in the information contained in the Dictionary of Occupational Titles, but there is a reasonable explanation for the discrepancy. (*Id.* at p. 48.) Although there is no DOT provision for production pace; type of interaction with others; time off task and absenteeism; the expert's opinion was based upon experience and work history, and the claimant did not object. (*Id.*) The ALJ determined that "[a]s an expert, he is qualified to make a determination consistent with recognized administratively noticed government agency publications and manuals that are consistent with the DOT in regards to these limitations pursuant to SSR 00-4p[.]" (*Id.* at p. 48.) Thus, "[b]ased on the testimony of the vocational expert," the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*) "A finding of 'non-disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines." (*Id.*)

### C. Procedural History

On December 8, 2020, Comer, through counsel, initiated this action in federal court to seek review of the final decision of the ALJ pursuant to 42 U.S.C. § 1383(c)(3). (Doc. 3.) On August 16, 2021, Comer filed his Statement of Specific Errors. (Doc. 10.) The Commissioner responded, and Comer replied. (Docs. 14, 15.) On August 18, 2022, the Magistrate Judge issued a Report and Recommendation in which she considered and rejected Comer's alleged errors and recommended affirming the ALJ's finding of non-disability. (Doc. 16.) On August 31, 2022, Comer filed Objections to the Report and Recommendation, to which the Commissioner filed a Response on September 16, 2022. (Docs. 17, 19.) For the reasons that follow, Comer's

Objections are **OVERRULED**, and the Report and Recommendation will be **ADOPTED WITH MODIFICATION**.

II.     **Standard of Review**

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

"Objections to a magistrate judge's Report and Recommendation must be more than simply a rehashing of arguments previously before the Court." *Kirkland v. Comm'r of Soc. Sec.*, No. 5:20-cv-2480, 2022 WL 643169, at *4 (N.D. Ohio Mar. 4, 2022) (overruling objections on the basis that they were raised and rejected in the magistrate judge's report and recommendation) (citing *United States v. Dawson*, No. 4:19-CR-206, 2020 WL 109137, at *1 (N.D. Ohio Jan. 9, 2020) (stating that "[t]he Court need not afford de novo review to objections which merely rehash arguments presented to and considered by the Magistrate Judge")). A general complaint or objection has the same effect as failure to object and is reviewed for clear error. *Id.* at *5 (citing *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, at *4 (N.D. Ohio April 19, 2021)); *Littlepage v. Barrett*, No. 20-cv-800, 2021 WL 5275721, at *3 (S.D. Ohio Nov. 12, 2021) (applying clear error review to "objections" that were too general to be considered for de novo review).

When a district court is asked to review the Commissioner's denial of benefits, it must determine whether the ALJ's non-disability finding is supported by substantial evidence. 42

7

U.S.C. § 405(g). "'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).

The Commissioner must resolve conflicts in the evidence and to decide questions of credibility. *Id.* (citing *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Id.* (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Id.* (citing *Mullen*). Thus, the Commissioner's decision must be affirmed if it is supported by substantial evidence. *Id.* (citing *Kirk*).

**III.     Analysis**

Comer raises three objections to the Magistrate Judge's Report and Recommendation: (1) the ALJ's determination of his RFC—the most he is able to do despite his impairments—was based upon the incorrect legal standard and/or was not supported by substantial evidence; (2) the ALJ failed to develop the record; and (3) the Appeals Council failed to consider new medical evidence. All three arguments were previously raised, considered, and rejected by the Magistrate Judge. For the reasons that follow, Comer's objections are **OVERRULED**. However, as Comer and the Commissioner jointly identified a factual discrepancy in the record, the Report and Recommendation will be **ADOPTED WITH MODIFICATION.**

A. **Objection to RFC Determination**

Comer argues the ALJ's determination of his RFC, or what he can do despite his limitations, is contrary to law and/or not supported by substantial evidence. Comer argues that the ALJ improperly focused upon activities he was able to do at his home rather than in a standard, competitive work environment. Though he previously argued this point, he contends the Magistrate Judge's treatment of this issue was cursory and included a factual error.

The Court first will address a factual discrepancy in the Magistrate Judge's Report and Recommendation. The ALJ thoroughly and accurately summarized Comer's testimony, medical records, and the opinion evidence in determining Comer's RFC. The Magistrate Judge found the ALJ's decision and RFC finding to be substantially supported by the record. In so finding, she accurately summarized Comer's records—with one exception. As both Comer and the Commissioner recognize, the Magistrate Judge included one sentence of extraneous facts, stating that Comer performed daily activities of "caring for his dog, preparing meals, making the bed, doing laundry, washing dishes, driving, shopping for groceries, shopping on-line for gifts, and attending church twice per week, and had no difficulty with personal care." (Doc. 16 at PageID 647.) These facts are not in the record and should be stricken from the Report and Recommendation.

However, the seemingly erroneous inclusion of these facts does not necessitate reversal of the ALJ's decision. The ALJ did not cite or consider the extraneous facts in reaching her decision; thus, they played no bearing in her decision. *See Thornsberry v. Comm'r of Soc. Sec.*, 37 F. App'x 749, 751 (6th Cir. 2002) (magistrate judge's mistake did not require reversal because the court ultimately reviews the Commissioner's decision, rather than that of the district court). The Magistrate Judge relied upon Comer's daily activities for the proposition that he is

able to do tasks around his home and care for himself, which can undermine a claimant's credibility regarding his limitations.  "An ALJ not only is permitted to consider a claimant's level of daily activities in assessing his credibility, but is generally required to do so." *Kyle v. Comm'r of Soc. Sec.*, No. 1:12-cv-748, 2013 WL 5925777, at *8 (S.D. Ohio Oct. 31, 2013), *report and recommendation adopted*, 2013 WL 6592324 (S.D. Ohio Dec. 16, 2013); s*ee Sorrell v. Comm. of Soc. Sec.*, 656 F. App'x 162, 174–75 (6th Cir. 2016) (contrasting claimant's daily activities with reports of physical pain to make a credibility finding about claimant's limitations). The record reflects that Comer performed activities demonstrating his self-sufficiency, as accurately cited by both the ALJ and the Magistrate Judge, including preparing meals, shopping with his mother, making change, doing artwork and selling it to friends, watching movies, reading, visiting his grandmother, getting to appointments, and relating well to his providers. (*See* Doc. 9 at p. 47.)

Comer also argues that the activities upon which the ALJ relied do not translate into the ability to engage in sustained competitive employment outside the home.  He relies upon 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(6)(b) for the proposition that the "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [an] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  He also relies upon *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims,* SSR 96-8P, 1996 WL 374184 (July 2, 1996), which includes a discussion that "[o]rdinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities

10

on that basis." (emphasis in original). Comer argues that his home activities do not demonstrate that he can do work on a regular and continuing basis or that he can be around other people in a work setting. However, as previously discussed, the Commissioner may rely upon the claimant's daily activities to assess the claimant's credibility about how disabling his impairments are, which is what occurred here. *See Sorrell*, 656 F. App'x at 174–75 (6th Cir. 2016) (contrasting claimant's daily activities with reports of physical pain to make a credibility finding about claimant's limitations). Here, the ALJ did not cite to Comer's daily activities to prove he could work, but rather to show a discrepancy of his allegations as to how disabling his impairments are. The ALJ then determined that Comer's credibility was undermined by medical records demonstrating a higher level of functioning than did his testimony.

For these reasons, upon de novo review, the Court agrees with the Magistrate Judge's finding that the ALJ's decision was supported by substantial evidence. The Objection is **OVERRULED**. However, the extraneous facts cited by the Magistrate Judge are **STRICKEN** from the Report and Recommendation.

### B. Obligation to Develop the Record

The ALJ determined that Comer has not been under a disability since January 30, 2018, the date his application for benefits was filed. Comer argues that the ALJ failed to develop the record with respect to the function effects of the symptoms of his depressive and anxiety disorders by failing to obtain a consultative examination or medical expert. Comer also argues the ALJ owed a heightened duty to develop the administrative record because Comer was unrepresented by counsel and failed to meet that duty.[2]

---

[2] These are the same arguments Comer raised in his Statement of Errors, which the Magistrate Judge fully considered and rejected; and as such, these "objections" are entitled only to clear error review. *See Kirkland*, No. 5:20-cv-2480, 2022 WL 643169, at *4 (clear error review applies to general objections).

Under either clear error or de novo review, the objection is without merit. As the Magistrate Judge properly cited, a claimant bears the burden to prove disability. *See* 20 C.F.R. § 416.912(a)(1) ("In general, you have to prove to us that you are blind or disabled."). The ALJ must develop the complete medical history for at least the 12 months preceding the month in which the application was filed and make every reasonable effort to help the claimant obtain medical evidence from his medical sources and entities. *Id*. at § 416.912(b)(1). The decision to obtain a consultative examination generally is discretionary. *Id*. at § 416.912(b)(2); 20 C.F.R. § 416.919; §§ 416.919(a)–(f). *See also Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (an ALJ has discretion to determine whether additional evidence is necessary). In this case, the ALJ exercised her discretion and considered a number of disability-related documents and medical records, as discussed *supra*. There is no basis to disturb that decision.

Further, although the Sixth Circuit has recognized a heightened duty to develop the record in rare instances, that duty did not apply in this case, as the Magistrate Judge determined. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits pursuant to 20 C.F.R. § 404.1512(a). Though an ALJ may not become partisan or assume the role of counsel, she may owe a special duty to develop the record where the claimant appears without counsel. *Lashley v. Sec'y of Health and Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). "There is no bright line test for determining when the administrative law judge has assumed the role of counsel or failed to fully develop the record. The determination in each case must be made on a case by case basis." *Id*. at 1052. The *Lashley* court found this heightened duty to develop the record applied and was not met in a case involving a 79-year-old claimant who was a two-time stroke victim, possessed a fifth-grade education, was inarticulate and easily confused, and appeared without counsel. *Id*. at 1050–52.

The administrative hearing lasted only 25 minutes and was transcribed in approximately 11 pages, during which the claimant was superficially questioned concerning his daily activities and physical limitations. *Id*. at 1052.  In contrast, in *Wilson v. Commissioner of Social Security*, the Sixth Circuit found the special circumstances of *Lashley* did not apply to a claimant who chose to proceed without counsel where the hearing transcript demonstrated the claimant's grasp of the proceedings and adequacy of case presentation to the ALJ.  280 Fed. App'x 456, 459 (6th Cir. 2008).  In *Wilson*, the Court held that absent the special circumstances of *Lashley*, a reviewing court typically affirms that the claimant bears the ultimate burden of proving disability.  *Id*.

The Sixth Circuit recently confirmed *Wilson*'s description of *Lashley* as an aberration. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 564 (6th Cir. July 27, 2022) ("Time and practice together confirm that *Lashley* is best viewed as an extreme example of an ALJ failing to adequately develop the record before it.")  "[A]bsent such acute circumstances, we do not 'heighten' the ALJ's fact-finding responsibility, even where a claimant is unsophisticated and appears without counsel."  *Id*.  The Court found in *Moats* that the case was not an "extreme" example, where there was no indication the claimant failed to understand hearing procedures.  *Id*.  The claimant had no questions about the process for evaluating his disability, and he opted to proceed without representation because he said he could do so himself.  *Id*.  Further, the claimant prepared for the hearing, which indicated he understood his evidentiary burden.  *Id*.  He was able to answer questions from the ALJ and vocational expert regarding his medical, educational, and employment history.  *Id*.  In all, the ALJ satisfied his duty to investigate and develop relevant facts.  *Id*.

In finding that a heightened duty to develop the record does not apply in this case, the Magistrate Judge considered both the *Wilson* and *Lashley* cases and determined that the facts of

13

this case are most similar to *Wilson*. Comer disagrees with the Magistrate Judge's conclusion, arguing that the hearing transcript reflects that he grasped he was having a hearing, but he did not understand enough about how the system worked to ask his mental health provider for a report setting forth his limitations.

The Court reviewed the hearing transcript. (*See* Doc. 9 at pp. 57–85.) The hearing lasted approximately a half hour. The ALJ advised Comer that he was entitled to postpone the hearing if he sought to obtain representation. (*Id*. at p. 61.) Yet, Comer elected to proceed without a representative and signed a waiver to that effect. (*Id*. at p. 62.) Comer was articulate, self-aware, and able to answer questions about his conditions and previous work experience. He was also given the opportunity to add information in the record. Though not the most robust of hearings, the Court finds that it lacks the red flags of *Lashley* and certainly demonstrates Comer's intelligence and competence. Similar to the claimants in *Wilson* and *Moats*, the record demonstrates that Comer was aware of the proceedings and capable of representing himself.

Comer's objections rehash the prior arguments the Magistrate Judge considered and rejected. Upon review, the undersigned agrees with the Magistrate Judge's conclusion that the ALJ evaluated the record and reasonably determined the record evidence was sufficient to determine whether Plaintiff's mental impairments were disabling. Thus, the objection is **OVERRULED**.

### C. Late Medical Evidence

Finally, Comer requests that the Court remand his case to allow the Commissioner to consider additional records submitted after the ALJ's January 13, 2020 decision. The Magistrate Judge conducted a thorough analysis of this issue, considered the applicable law, and determined the records were not material. Although Comer disagrees with the outcome, he rehashes the

same arguments that have been considered and rejected by the Magistrate Judge. Upon clear error review, there is no basis to disturb the Magistrate Judge's ruling on this issue. *See Kirkland*, 2022 WL 643169, at *4 (overruling objections on the basis that they were raised and rejected in the magistrate judge's report and recommendation).[3] Thus, this objection, too, is **OVERRULED**.

IV. **Conclusion**

For the reasons discussed herein, the Court **OVERRULES** Comer's Objections to the Magistrate Judge's Report and Recommendation (Doc. 17). With the modification of striking the extraneous factual citation on Doc. 16 at PageID 647, the Report and Recommendation is otherwise **ADOPTED**.

**IT IS SO ORDERED**.

Dated:  October 17, 2022                    S/Susan J. Dlott
                                            Judge Susan J. Dlott
                                            United States District Court

---

[3] In addition to failing to demonstrate materiality, Comer failed to show "good cause" for his late submission of evidence. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (the district court can remand a case for further administrative proceedings if a claimant shows that the evidence is new and material and that there was good cause, meaning a reasonable justification for failure to acquire and present the evidence to the ALJ).